NATIONAL LOAN & INVESTMENT CO. v. ROCKLAND CO.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1899.)

No. 1,128.

1. PROMISSORY NOTES OF CORPORATIONS—POWER TO EXECUTE — PRESUMPTION FROM SIGNATURES OF OFFICERS.

A private trading corporation has the implied power to issue promissory notes, and one who purchases notes executed in behalf of such a corporation, and signed by its officers, may rely on the presumption that such officers have discharged their duty, and have not exceeded their authority in executing them.

2. REVIEW—ESTOPPEL OF PARTY TO ALLEGE ERROR—FINDING OF REFEREE.

A party cannot assign as error a finding of a judge or referee made at his request.

3. CORPORATIONS—COMPENSATION OF OFFICERS FOR PAST SERVICES—POWER OF DIRECTORS TO FIX.

Officers of a corporation, who are also directors, and who, without any agreement, express or implied, with the corporation or its owners, or their representatives, have voluntarily rendered their services, can recover no back pay or compensation therefor; and it is beyond the powers of the board of directors, after such services are rendered, to pay for them out of the funds of the corporation, or to create a debt of the corporation on account of them; but such officers, who have rendered their services under an agreement, either express or implied, with the corporation, its owners or representatives, that they shall receive reasonable but indefinite compensation therefor, may recover as much as their services are worth, and it is not beyond the powers of the board of directors to fix and pay reasonable salaries to them after they have discharged the duties of their offices.

4. SAME—NOTE GIVEN FOR SALARY OF OFFICER.

Where, after the organization of a corporation, it was agreed and understood at an informal meeting of all the stockholders that the officers should be paid a reasonable compensation for their services, and by a by-law the board of directors was given power to fix the compensation of officers, their subsequent action in voting the president a reasonable salary for past services was legal, and a note of the corporation executed to him therefor was not without consideration.

In Error to the Circuit Court of the United States for the District of Minnesota.

George D. Emery (Charles A. Willard, on the brief), for plaintiff in error.

M. H. Boutelle (N. H. Chase, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action on a promissory note for $3,747.64, dated October 1, 1896, signed, "The National Loan and Investment Company, by S. P. Howard, Vice Pres., A. B. Hush, Sec. and Treas.," payable to the order of Henry S. Jenkins, and indorsed by him to the defendant in error, the Rockland Company, a corporation, which brought the action and alleged these facts. The National Loan & Investment Company, the plaintiff in error, is a corporation; and it answered the complaint of the Rockland Company that it never made the note, and that it was without consideration and void. A jury was waived, and the case was tried by a referee, who made a special finding of the facts and of his con-

clusions of law. Exceptions were filed to these findings and conclusions, but they were overruled, and a judgment was rendered against the plaintiff in error for the amount of the note and interest.

It is assigned as error that the referee admitted in evidence the note in suit, and other notes of which this was the last renewal, over the objections of the investment company that they were incompetent, that no authority had been shown for either of the officers to execute them, and that no consideration for them had been proved. But the notes themselves were prima facie evidence of a valuable consideration. They recited that they were made for value received. When these objections were made, the defendant in error had proved that these notes bore the genuine signatures of the vice president and treasurer of the corporation, that the payee named in them was its president, and that the investment company was ·incorporated by the terms of its articles to buy, own, sell, and deal in all kinds of property, and to do any lawful business necessary or expedient for this purpose. A private trading corporation has the implied power to issue promissory notes. The signatures of its officers thereon are presumptive evidence of their authority to make negotiable paper on its behalf. The acts of the officers of corporations, within the scope of their powers, are prima facie evidence of the acts requisite to give them the necessary authority. One who purchases the notes of a corporation may rely upon the presumption that its officers have discharged their duty, and have not exceeded their authority in executing them, and the law will not deprive him of this presumption when he presents them to the courts. Merchants' Nat. Bank of Gardiner v. Citizens' Gaslight Co., 159 Mass. 505, 507, 508, 34 N. E. 1083; City of Lincoln·v. Sun Vapor Street-Light Co., 8 C. C. A. 253, 257, 59 Fed. 756, 760, and 19 U. S. App. 431, 438; Thomp. Corp. §§ 5730, 5741.

Another error alleged is that, in the absence of any evidence in support of such a finding, the referee found the facts set forth in the second paragraph below, which we quote from his report, and the court overruled an exception to that finding.'

"(1) That the incorporators of said defendant, the National Loan & Investment Company, were Valentine G. Hush, Henry S. Jenkins, Alfred B. Hush, and Stephen B. Howard, and that, at the time of the agreement or understanding next hereinafter referred to, said incorporators owned the entire capital stock of said corporation. (2) That subsequent to the organization of said corporation, and at or about the time of the commencement of its corporate business, an informal meeting of said incorporators was held, whereat all of said incorporators were present, and whereat it was understood and agreed by and between all thereof that the officers of said corporation should receive from said corporation reasonable compensation for the services performed by them as such officers; and said agreement was not spread on the corporate records, save and excepting as it may appear to have been contemplated in the by-law next referred to. That no resolution was adopted, either by the incorporators or board of directors, fixing the amount of the salaries of the officers in advance."  '

An examination of the record, however, discloses the fact that the defendant in error cannot be permitted to urge this objection. Its counsel expressly requested the referee to make this finding. Parties cannot avail themselves of errors which they have themselves

committed, or which they have induced the referee or judge who tried their case to make. Walton v. Railway Co., 6 C. C. A. 223, 225, 56 Fed. 1006, 1008; Chase v. Driver, 92 Fed. 780; Long v. Fox, 100 Ill. 43, 50; Nitche v. Earle, 117 Ind. 270, 275, 19 N. E. 749; Dunning v. West, 66 Ill. 366, 367; Noble v. Blount, 77 Mo. 235; Holmes v. Braidwood, 82 Mo. 610, 617; Price v. Town of Breckenridge, 92 Mo. 378, 387, 5 S. W. 20; Fairbanks v. Long, 91 Mo. 628, 633, 4 S. W. 499.

It is contended that the facts found by the referee do not warrant his conclusion of law that the defendant in error was entitled to a judgment upon the note. The position here urged is that the note was given for back pay voted to the president of the corporation by the board of directors of which he was a member, that this was an attempt to create a debt of the company by a mere vote of the board without any consideration, and that this act was beyond the powers of the directors and void. The directors of a corporation are trustees for its stockholders. They represent and act for the owners of its stock. Ordinarily the employment of a servant by a corporation raises the implication of a contract to pay fair wages or a reasonable salary for the service rendered, because it is the custom to pay such compensation, and men rarely sacrifice their time and expend their labor or their money in the service of others without reward. Directors of corporations, however, usually serve without wages or salary. They are generally financially interested in the success of the corporation they represent, and their service as directors secures its reward in the benefit which it confers upon the stock which they own. In other words, the custom is to pay the ordinary employés of corporations for the services they render, but it is the custom of directors of corporations to serve gratuitously, without compensation or the expectation of it. The presumption of law follows the custom. From the employment of an ordinary servant, the law implies a contract to pay him. From the service of a director, the implication is that he serves gratuitously. The latter presumption prevails, in the absence of an understanding or an agreement to the contrary, when directors are discharging the duties of other offices of the corporation to which they are chosen by the directory, such as those of president, secretary, and treasurer. Moreover, as the members of boards of directors act in a fiduciary capacity, they are without the power or authority to dispose of the property of the corporation without consideration. Consequently they may not lawfully vote back pay to an officer who has been serving the corporation voluntarily without any agreement that he shall receive any reward for the discharge of his duties. It is beyond their powers to create a debt of the corporation by their mere vote or resolution. Some authorities have gone so far as to hold that officers of a corporation, who are also its directors, cannot recover for the discharge of their duties unless their compensation is fixed by a by-law or by a resolution of the board before their services are rendered. Gridley v. Railway Co., 71 Ill. 200, 203; Kilpatrick v. Bridge Co., 49 Pa. St. 118, 121; Wood v. Manufacturing Co., 23 Or. 23, 25, 23 Pac. 848. The fact is, however, that, in the active

94 F.—22

and actual business transactions of the world, many officers of corporations, who are also members of their boards of directors, spend their time and their energies for years in the interest of their corporations, and greatly benefit the owners of their stock, under agreements that they shall have just, but indefinite, compensation for their services. We are unwilling to hold that such officers should be deprived of all compensation because the amounts of their salaries were not definitely fixed before they entered upon the discharge of their duties. A thoughtful and deliberate consideration of this entire question, and an extended consideration of the authorities upon it, has led to the conclusion that this is the true rule: Officers of a corporation, who are also directors, and who, without any agreement, express or implied, with the corporation or its owners, or their representatives, have voluntarily rendered their services, can recover no back pay or compensation therefor; and it is beyond the powers of the board of directors, after such services are rendered, to pay for them out of the funds of the corporation, or to create a debt of the corporation on account of them. Jones v. Morrison, 31 Minn. 140, 147, 16 N. W. 854; Blue v. Bank, 145 Ind. 518, 522, 43 N. E. 655; Doe v. Transportation Co., 78 Fed. 62, 67; Association v. Stonemetz, 29 Pa. St. 534; Railroad Co. v. Ketchum, 27 Conn. 170; Road Co. v. Branegan, 40 Ind. 361, 364. But such officers, who have rendered their services under an agreement, either express or implied, with the corporation, its owners or representatives, that they shall receive reasonable, but indefinite, compensation therefor, may recover as much as their services are worth; and it is not beyond the powers of the board of directors to fix and pay reasonable salaries to them after they have discharged the duties of their offices. Missouri River Co. v. Richards, 8 Kan. 76, 81; Rogers v. Railway Co., 22 Minn. 25, 27; Railroad Co. v. Tiernan (Kan. Sup.) 15 Pac. 544, 553; Stewart v. Railroad Co., 41 Fed. 736, 739; Rosborough v. Canal Co., 22 Cal. 557, 562.

This rule is well illustrated in the two cases from Minnesota which we have cited. In Jones v. Morrison, 31 Minn. 140, 147, 16 N. W. 854, the board of directors voted $39,375 back pay to the president of the corporation, who had served as such under a previous understanding that he should receive nothing for his services, and $7,200 to the vice president, who had served for a stipulated salary, which had been paid. The supreme court of Minnesota held that this act of the board was ultra vires, and that the notes of the corporation issued in pursuance of it were void. On the other hand, in Rogers v. Railway Co., 22 Minn. 25, 27, that court held that a member of the board of directors of the railway company, who had been chosen by the board, and who had served as secretary under a by-law which authorized the directors to fix the compensation of the officers, and under an implied agreement with the corporation that he should receive a fair salary for his services, was entitled to recover as much as he had earned, although the amount of his compensation had never been fixed or allowed by the board, either before or after he rendered his services.

Under the rule which we have announced, and thus illustrated,

the objection of the plaintiff in error to the conclusion of the reference and the judgment of the court in the case in hand cannot be sustained. These essential facts were found by the referee: The defendant in error was incorporated on September 24, 1886. At the time of the commencement of its corporate business, but after its organization, all its incorporators, and all the persons interested in it, understood and agreed with Henry S. Jenkins, who was chosen its president, that all the officers of the corporation should receive from it reasonable compensation for the services which they performed, and a by-law of the corporation was adopted by its stockholders at the time of its organization to the effect that the board of directors should fix the salaries of all the officers of the corporation. Jenkins served as president from October 14, 1886, until after the year 1892. On October 30, 1890, he presented to the board of directors a claim for $600 per annum for his services as president from September 1, 1887, to September 1, 1890; and his claim was allowed by the board, and regularly entered upon the books of the corporation. On May 18, 1892, he presented a claim for $600 for his services as president from September 1, 1890, to September 1, 1891; and this claim was allowed by the board of directors at their annual meeting on that day, and was duly entered on the books of the corporation. At the times when these claims were allowed, there was an oral agreement between Jenkins and the board that they should draw the current bank rate of interest, which was then 8 per cent. per annum, until they were paid. On October 2, 1893, the investment company made a promissory note for the amount due upon these claims, payable one year from that date, with interest at 8 per cent. per annum, and delivered it to Jenkins. The note in suit is the last renewal of the note thus made. At the times when the claims of Jenkins were allowed, Jenkins, Hush, and Howard were the members of the board of directors, and the claims were unanimously allowed; so that the vote of Jenkins was unnecessary to pass them, and his presence was not necessary to form a quorum of the board. The corporation had no creditors, and owed no debts. The directors owned a majority of the stock of the corporation. Some of this stock had been pledged, but the pledgees had not caused it to be transferred to their names, and were not entitled to vote it. No objection was ever made by the corporation, or by any one in its behalf, to the acts of the directors in allowing the claims of Jenkins, until this action was brought, in 1897; and all the acts of the directors were done in good faith, and without fraud. The defendant in error was the owner of the note in suit when this action was brought. In this state of the facts, the note cannot be said to be without consideration, nor can the acts of the board of directors be justly held to have been beyond their powers or void. The stockholders expressly empowered the board of directors to fix the salaries of all the officers of the corporation. This by-law itself raises a strong presumption that the owners of the corporation intended to pay its officers for their services. The board of directors could not fix the salaries of officers, if no salaries were to be paid. When to this by-law is added the express finding of

the referee that it was understood and agreed at the inception of the business of the corporation between all its incorporators and Jenkins, who was chosen president, that he should receive reasonable compensation for his services in that office, and the further fact that he served under this by-law and agreement, and his salary was fixed and allowed without objection thereunder, the conclusion is irresistible that his right to compensation rests upon a valid implied contract between him and all the parties interested in the corporation made before his services were rendered. The acts of the board in fixing the amount of his salary were expressly authorized by the by-law, and were naught but the performance of the prior agreement by which the corporation was bound. The note was not without consideration, and the judgment upon it was right.

There are 48 assignments of error in the record in this case. We have carefully examined them all. The conclusions at which we have arrived upon those already discussed are decisive of all the material questions in the case, and it is unnecessary to extend this opinion further. The assignments which we have not discussed were either intended to present the questions considered in other forms, or are without substantial merit. The judgment below must be affirmed, and it is so ordered.